

IN THE
TENTH COURT OF APPEALS

No. 10-12-00389-CR

STEVEN OLIVER,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 13th District Court
Navarro County, Texas
Trial Court No. D34573-CR

MEMORANDUM OPINION

In six issues, appellant, Steven Alan Oliver, challenges his conviction for

continuous sexual abuse of children, a first-degree felony. We affirm.

I.      BACKGROUND[1]

The record reveals that the Oliver family consisted of appellant, mother Lisa, and

six girls: Amy, Melissa, Autumn, Madysen, Melanie, and Abigail.[2] In the instant case,

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those facts necessary to the disposition of the case. *See* TEX. R. APP. P. 47.1, 47.4.

appellant was initially charged by indictment with the continuous sexual abuse of Madysen, Autumn, Melanie, and Melissa; however, because Autumn recanted approximately two weeks before trial, the indictment was amended to reference only Madysen, Melanie, and Melissa. At the conclusion of the evidence, the jury found appellant guilty of the charged offense and assessed punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II. ADMISSIBILITY OF OUTCRY TESTIMONY

In his third issue, appellant contends that the trial court abused its discretion by: (1) failing to hold a proper hearing on the admissibility of outcry testimony that was unreliable and should have been excluded; (2) determining that Autumn's statements were reliable under Texas Code of Criminal Procedure article 38.072; and (3) admitting Madysen's hearsay statement to Kristi Skains, a forensic interviewer for the Advocacy Center for Crime Victims and Children.[3] *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2013).

### A. Standard of Review and Applicable Law

We review the trial court's admission of evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). The trial court has broad

---

[2] Though the parties refer to the Oliver children based on the names above, the record suggests that some or all of the children's names were changed upon being placed in the foster mother's home. As such, we need not identify the children by their initials, as we would normally do to protect their identity.

[3] We note that appellant's third issue is arguably multifarious. An issue is multifarious when it raises more than one specific complaint, and we are permitted to reject multifarious issues on that basis alone. *Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010); *Wood v. State*, 18 S.W.3d 642, 649 n.6 (Tex. Crim. App. 2000). However, out of an abundance of caution, we will analyze appellant's third issue.

discretion in determining the proper outcry witness, and its determination will not be disturbed absent an abuse of discretion. *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.— Dallas 1999, pet. ref'd) (citing *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *Schuster v. State*, 852 S.W.2d 766, 768 (Tex. App.—Fort Worth 1993, pet. ref'd)). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

The outcry testimony of a child victim is hearsay when it is offered for the truth of the matter asserted. *Dorado v. State*, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992). However, it is admissible if it falls within an exception to the hearsay rule. *Id.* In child-abuse cases, Texas Code of Criminal Procedure article 38.072, section 2(a) provides for the admission of hearsay statements describing the offense that are made by the child victim, who is twelve years or younger, to the first person eighteen years or older. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a). To qualify as a proper outcry statement, the child must have described the alleged offense in some discernible way and must have more than generally insinuated that sexual abuse occurred. *See Sims*, 12 S.W.3d at 500.

"Multiple outcry witnesses can testify about different instances of abuse committed by the defendant against the victim." *Tear v. State*, 74 S.W.3d 555, 559 (Tex. App.—Dallas 2002, pet. ref'd) (citing *Hernandez v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd)). "If the child victim first described one type of abuse to

one outcry witness, and first described a different type of abuse to a second outcry witness, the second witness could testify about the different instance of abuse." *Id.* (citing *Hernandez*, 973 S.W.2d at 789 (holding that a CPS worker could testify about a victim's outcry of sexual assault because the victim's previous outcry was to his mother about another sexual assault at a different location); *Turner v. State*, 924 S.W.2d 180, 183 (Tex. App.—Eastland 1996, pet. ref'd) (stating that a police officer could testify about a victim's outcry about penile penetration because the victim's previous outcry to a counselor was about digital penetration)). In other words, "[b]ecause of the way in which the statute is written, an outcry witness is not person-specific, but event-specific." *Broderick v. State*, 35 S.W.3d 67, 74 (Tex. App.—Texarkana 2000, pet. ref'd); *see Polk v. State*, 367 S.W.3d 449, 453 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

## B.  Discussion

In his first argument, appellant complains that the trial court abused its discretion by failing to hold a proper hearing to determine the reliability of the outcry statements made by the children. However, a review of the record belies appellant's first contention. On October 16, 2012, prior to the introduction of the outcry testimony, the trial court conducted a hearing outside the presence of the jury to determine the reliability of the testimony. Specifically, the trial court considered the State's notices of "Intent to Introduce Child's Hearsay Outcry Statement." Included in the notices were the names of the people to whom the child made the statement, the circumstances under which the statement was given, the approximate date on which the statement was made, and a summary of the statement. For Madysen, the State gave notice of

three outcry witnesses: the foster mother, Skains, and Pamela Crumpton, Madysen's counselor. With respect to Melissa, the State gave notice that Deborah January, the child's CPS caseworker, the foster mother, and Skains were the anticipated outcry witnesses. Moreover, at the hearing, the trial court reviewed the notices, and the State explained the contents of the notices. Ultimately, the trial court ruled that the outcry statements made by Madysen and Melissa were reliable "based on the time, content, and circumstances of the statements and the child is available to testify—the children are available to testify."

Nevertheless, appellant appears to argue that the hearing was not proper because the outcry witnesses were not actually called as witnesses at the hearing. However, article 38.072 does not specify the manner in which a court must consider and evaluate the outcry statements. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. It merely states that the trial court must hold a hearing outside the presence of the jury to determine whether the outcry statements are reliable based on the time, content, and circumstances of the statements. *Id.* at art. 38.072, §2(b)(2); *see Sanchez v. State*, 354 S.W.3d 476, 484-85 (Tex. Crim. App. 2011). Indeed, the Texas Court of Criminal Appeals has stated that article 38.072 "charges the trial court with determining the reliability based on 'the time, content, and circumstances of the statement'; it does not charge the trial court with determining the reliability of the statement based on the credibility of the outcry witness." *Sanchez*, 354 S.W.3d at 487-88 (quoting TEX. CODE CRIM. PROC. ANN. art. 38.072, §2(b)(2)). More specifically, the *Sanchez* Court stated that article 38.072 does not authorize "elaborate mini-trials in which defendants could cross-

examine the outcry witness regarding biases in order to ferret out background evidence of prompting or manipulation." *Id.* at 488. Furthermore, "[t]rial courts have great discretion in how they manage their Article 38.072 hearings." *Id.* Here, the record establishes that the trial court conducted a proper outcry hearing and that it did not abuse its discretion when it found the statements were reliable based on the time, content, and circumstances of the statements. *See id.* at 488-89; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.072, §2(b).

With respect to appellant's complaints about Autumn's outcry statements, we note that the State amended the indictment to remove Autumn as a victim; as such, article 38.072 was not applicable to her outcry statements. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 1. The State argues that Autumn's statements to others were admissible as prior inconsistent statements under Texas Rules of Evidence 801(e)(1)(A) and 806. *See* TEX. R. EVID. 801(e)(1)(A), 806. Here, Autumn recanted her outcry, and appellant first introduced her recantation, over the State's objection, during the cross-examination of Crumpton. Moreover, appellant cross-examined several of the State's witnesses about Autumn's recantation.

Nevertheless, even if the trial court erred in admitting Autumn's outcry statements, we conclude that any such error was harmless in this case. We may not reverse a conviction for non-constitutional error unless the error affects the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). The admission of inadmissible hearsay is non-constitutional error, and such error does not affect a substantial right if, after examining the record as a whole, we are reasonably assured that the error did not

influence the verdict or had but a slight effect. *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Here, appellant was charged with continuous sexual assault of a child—namely, Madysen, Melanie, and Melissa. As mentioned below, the evidence supporting appellant's conviction is legally sufficient, irrespective of Autumn's outcry statements. As such, we are reasonably assured that the complained-of error did not influence the verdict or had but a slight effect. *See Chapman*, 150 S.W.3d at 814.

And finally, appellant argues that Skains's testimony regarding statements Madysen made about seeing appellant sexually abuse Abigail and Melanie was inadmissible hearsay that is not included within the statutory meaning of outcry statements under article 38.072. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. At trial, appellant objected to Skains's testimony about the nature of Madysen's outcry on the grounds that he was not provided with notice that Skains would be called as an outcry witness with respect to Madysen. The trial court overruled appellant's objection but granted him a running objection. When Skains was later asked about the content of Madysen's outcry, appellant did not specifically object on the grounds that it was inadmissible hearsay not included within the statutory meaning of outcry statements under article 38.072. *See id.*

To preserve error, Texas Rule of Appellate Procedure 33.1(a) requires the complaining party to make a specific objection or complaint and obtain a ruling thereon before the trial court. *See* TEX. R. APP. P. 33.1(a); *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Texas courts have held that points or error on appeal must

correspond or comport with objections and arguments made at trial. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1999); *see Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd). "Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review." *Wright*, 154 S.W.3d at 241. Because appellant's appellate argument with respect to Skains's testimony does not comport with the arguments made at trial, we cannot say that appellant has preserved this complaint for review. *See* TEX. R. APP. P. 33.1(a); *see also Wilson*, 71 S.W.3d at 349; *Wright*, 154 S.W.3d at 241. We overrule appellant's third issue.

### III. CROSS-EXAMINATION OF CPS SUPERVISOR LAURA WHITE AND THE FOSTER MOTHER

In his fifth and sixth issues, appellant argues that the trial court erred in denying him the opportunity to cross-examine CPS supervisor Laura White and the foster mother.

### A. Applicable Law

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This procedural guarantee applies to both federal and state prosecutions. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 1067-68, 13 L. Ed. 2d 923 (1965); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

The Sixth Amendment protects the defendant's right not only to confront the witnesses against him, but to cross-examine them as well. *See Davis v. Alaska*, 415 U.S.

308, 316, 94 S. Ct. 1105, 1110, 39 L. Ed. 347 (1974). "The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, 415 U.S. at 316-17; 94 S. Ct. at 1110. The accused is entitled to great latitude to show a witness' bias or motive to falsify his testimony. *See Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim. App. [Panel Op.] 1982).

However, the right of cross-examination is not unlimited. The trial court retains wide latitude to impose reasonable limits on cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1434-35, 89 L. Ed. 674 (1986). The trial court must carefully consider the probative value of the evidence and weigh it against the risks of admission. *See Hodge*, 631 S.W.2d at 758. These potential risks include "the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing a jury, and the possibility of undue delay or waste of time." *Id.*; *see Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *see also Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993). Moreover, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, or to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 294, 88 L. Ed. 15 (1985) (emphasis in original); *see Walker v. State*, 300 S.W.3d 836, 844-45 (Tex. App.—Fort Worth 2009, pet. ref'd).

**B.  White's testimony**

On appeal, appellant argues that he should have been able to cross-examine White about an investigation into G.D., the father of the children's adoptive father, who

was convicted in 2011 for continuous sexual abuse of his adopted son, T.D. Specifically, appellant sought to inform the jury that the child victims in this case may have had contact with G.D. considering they lived in close proximity to one another.

At trial, the State objected to appellant's questioning of White regarding G.D. as irrelevant and prejudicial. *See* TEX. R. EVID. 401, 403. Any evidence that is both material and probative is relevant. *Id.* at R. 401. All relevant evidence is admissible unless otherwise excepted by the Constitution, statute, or other rules. *Id.* at R. 402. Evidence is relevant if it has any tendency to make more probable or less probable the existence of a consequential fact. *See id.* at R. 401; *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Evidence that is not relevant is inadmissible. TEX. R. EVID. 402. "If the trial court determines the evidence is irrelevant, the evidence is absolutely inadmissible and the trial court has no discretion to admit it." *Webb v. State*, 991 S.W.2d 408, 418 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Pritchett v. State*, 874 S.W.2d 168, 173-74 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd)). "Questions of relevance should be left largely to the trial court and will not be reversed absent an abuse of discretion." *Id.* (citing *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993)).

After our review of the record, we cannot say that the trial court abused its discretion in denying appellant the opportunity to cross-examine White regarding G.D. For several reasons, we hold that testimony pertaining to G.D. was irrelevant to the case at bar. First, in testimony heard outside the presence of the jury, White testified that, based on her knowledge of the investigation, G.D. sexually abused his sons, not his daughters. Furthermore, there is no evidence in the record indicating that any of the

children in the present case identified G.D. as the perpetrator of the sexual abuse. In fact, several witnesses testified that the children identified only appellant as the perpetrator of the sexual abuse in this case. Additionally, State's exhibit 5, a timeline which was admitted into evidence, illustrates that Melissa made a partial outcry prior to being placed in the foster mother's home. Autumn and Madysen's outcries occurred a few months after being placed in the foster mother's home; however, once again, neither child identified G.D. as a perpetrator of the sexual abuse.

Given the evidence mentioned above, we cannot say that testimony regarding G.D. had any tendency to make more probable or less probable the existence of a consequential fact. *See* TEX. R. EVID. 401; *see also Moses*, 105 S.W.3d at 626. Admission of the proffered evidence would have misled the jury, confused the issues, and caused undue delay. *See Lopez*, 18 S.W.3d at 222; *Chambers*, 866 S.W.2d at 27; *Hodge*, 631 S.W.2d at 758. Accordingly, we agree with the trial court's conclusion that the proffered testimony is irrelevant and therefore hold that the trial court did not err in prohibiting appellant from cross-examining witnesses about G.D. *See Van Arsdall*, 475 U.S. at 678, 106 S. Ct. at 1434-35; *see also* TEX. R. EVID. 401; *Lopez*, 18 S.W.3d at 222; *Chambers*, 866 S.W.2d at 27; *Hodge*, 631 S.W.2d at 758.

## C.    Foster mother's testimony

With respect to the foster mother, appellant asserts that he should have been able to cross-examine the foster mother about: (1) her own experience as a victim of sexual abuse; (2) the sexual abuse of her own children by her ex-husband; (3) the proximity of her house to a known child-sexual offender, G.D.; (4) the relationship the children may

have had with G.D.; and (5) any contact the children may have had with J.M., the foster mother's adult son who is under indictment for possession of child pornography. Appellant believed that this evidence demonstrates the possibility that the children made false allegations only after they had been placed in the foster mother's home.

At the outset, we note that we have previously concluded that the trial court did not abuse its discretion in prohibiting appellant from cross-examining witnesses about G.D. because such evidence is irrelevant. Accordingly, we need not address appellant's third and fourth contentions as to the foster mother.

Regarding appellant's remaining contentions, the record reflects that the trial court conducted two hearings outside the presence of the jury to determine the relevance of the topics on which appellant sought to cross-examine the foster mother. At the first hearing, the trial court heard evidence concerning G.D. and J.M. During cross-examination, the foster mother testified that she had been through foster-care training and had imposed a household rule that children in her home were not allowed to be alone with an adult. The foster mother noted that there had to be at least two children per each adult and that, based on this rule, she was certain that none of the Oliver children who had been placed with her had been alone with G.D. or J.M. The foster mother also stated that none of the Oliver children made outcries of sexual abuse against G.D. or J.M. The foster mother denied coaching the children, and she did not believe that the children made outcries of sexual abuse to make her happy or to have something in common with her. At the conclusion of the first hearing, the trial court determined that appellant could not cross-examine the foster mother on these topics.

At the second hearing, the foster mother testified that there had been phone calls made to CPS "against [her]," including allegations that she used excessive discipline and over-drugged her children. However, none of the reports were substantiated. The foster mother also recounted that her ex-husband had physically and sexually abused her biological daughter over fifteen years ago. Nevertheless, none of the above-information involved the Oliver children. Accordingly, at the conclusion of the second hearing, the trial court prohibited appellant from cross-examining the foster mother about the aforementioned information because the information was determined to be irrelevant.[4]

After reviewing the record, we fail to see how the complained-of evidence is relevant to this case. Specifically, none of the Oliver children made outcries of sexual abuse against G.D., J.M., or the foster mother's ex-husband. Moreover, the foster mother's testimony was that none of the Oliver children were left alone with G.D., J.M., or the foster mother's ex-husband. Additionally, the foster mother's encounters with CPS and her own past experience as a victim of sexual abuse do not have a tendency to make more probable or less probable the existence of a consequential fact. *See id.* at R. 401; *see also Moses*, 105 S.W.3d at 626. Accordingly, we cannot say that the trial court

---

[4] At trial and on appeal, the State argued that the complained-of topics were also barred by Texas Rule of Evidence 608(b), which provides that a witness's credibility may not be impeached with specific instances of the witness's conduct other than a criminal conviction as provided in Texas Rule of Evidence 609(a). *See* TEX. R. EVID. 608(b). However, we note that the Texas Court of Criminal Appeals has noted that the Confrontation Clause of the Sixth Amendment may require admission of evidence that Rule 608(b) would otherwise bar. *See Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000). Specifically, the *Billodeau* Court referenced an exception to Rule 608(b), Texas Rule of Evidence 613(b), which provides that a witness may be impeached by using extrinsic evidence to show bias or interest. 277 S.W.3d 34, 40 (Tex. Crim. App. 2009) (citing TEX. R. EVID. 613(b)). However, because we have determined that the complained-of topics are irrelevant to the case at bar, we need not analyze the impact of Texas Rule of Evidence 608(b) on this case.

erred in prohibiting appellant from cross-examining the foster mother about the topics listed above. *See Van Arsdall*, 475 U.S. at 678, 106 S. Ct. at 1434-35; *see also* TEX. R. EVID. 401; *Lopez*, 18 S.W.3d at 222; *Chambers*, 866 S.W.2d at 27; *Hodge*, 631 S.W.2d at 758. We therefore overrule appellant's fifth and sixth issues.

## IV.    THE JURY CHARGE

In his second issue, appellant argues that the trial court erred by failing to charge the jury regarding the necessity of unanimously finding that the alleged acts of sexual abuse occurred after September 1, 2007. Or, in other words, the trial court erred by failing to instruct jurors that they were prohibited from convicting appellant for acts committed before September 1, 2007.

### A.    Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Appellant admits that he did not object to the jury charge; thus he must show egregious harm. *See Almanza*, 686 S.W.2d at 171. In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

**B.    Discussion**

It is undisputed that section 21.02 of the Texas Penal Code, the operative statutory provision in this case, first became effective on September 1, 2007. *See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 Tex. Gen. Laws 1120, 1127, 1148; *see also Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd). "An offense is committed before the effective date of the statute if any element of the offense occurs before that date." *Martin*, 335 S.W.3d at 873; *see, e.g., McGough v. State*, No. 11-10-00073-CR, 2012 Tex. App. LEXIS 1669, at \*\*20-21 (Tex. App.—Eastland Mar. 1, 2012, pet. ref'd) (mem. op., not designated for publication). Thus, the State could not rely on any "act of sexual abuse" that occurred before September 1, 2007, to prove the offense of continuous sexual abuse of a young child. *See Martin*, 335 S.W.3d at 873; *see also McGough*, 2012 Tex. App. LEXIS 1669, at \*\*20-21. Instead, to obtain a conviction in this case, the State was required to prove that continuous sexual abuse occurred for a period of thirty or more days during the time period beginning on September 1, 2007,

and ending on January 28, 2008. *See Klein v. State*, 273 S.W.3d 297, 303 n.5 (Tex. Crim. App. 2008) (noting that the State is not required to prove the specific date the offense occurred when an "on or about" date is alleged within the indictment); *Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000).

On appeal, the State acknowledges that the trial court had a sua sponte duty to instruct the jury that they were not permitted to convict appellant for acts committed prior to September 1, 2007. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) (providing, among other things, that the trial court "shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case . . . ."); *see also Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (noting that the trial judge is "ultimately responsible for the accuracy of the jury charge and accompanying instructions"). As such, the State concedes that there was error in the trial court's charge to the jury. Nevertheless, the State asserts that the error was not so egregious as to necessitate reversal of appellant's conviction.

"After finding error in the court's charges, we must next consider whether Appellant was harmed by the error." *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (citing *Alberty v. State*, 250 S.W.3d 115, 119 (Tex. Crim. App. 2008)). When the requirements of Texas Code of Criminal Procedure article 36.14 have been disregarded, article 36.19 establishes the standard for reversal on appeal: "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of [the] defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006).

Here, the jury heard testimony from Melissa, CPS workers, Skains, and the foster mother—all of whom testified that the alleged sexual abuse began when the Oliver family lived in Oregon and continued after the family moved to Texas. In fact, the record reflects that the Olivers moved from Oregon to Texas in 2007. Witnesses testified that many instances of sexual abuse occurred from the time the Olivers moved to Texas until March 2008. Specifically, Melissa testified that she observed Abigail being sexually abused when Abigail was about four years old. The foster mother testified that Abigail was eight years old at the time of trial—October 16, 2012; as such, an inference could be made that Abigail was sexually abused in 2008, or, in other words, after September 1, 2007. Additionally, Deborah January, a conservatorship caseworker for CPS, stated that she received information from the therapist of the children that Melissa had "made another outcry about her father molesting her and that she indicated that it happened in Oregon and also in Texas at the house on Magnolia." January also confirmed that Autumn told her that appellant had touched her private area and did bad things to her "at the Magnolia house when her dad was drinking alcohol." Skains noted that the girls told her that appellant sexually abused them in the yellow house with a bow, which Amy identified as the Magnolia house in Corsicana, Texas. Moreover, January recounted that, a day before removal on March 28, 2008, Melissa made an outcry to her biological mother about recent sexual abuse, which suggests that at least two instances of sexual abuse occurred for a period of thirty days after September 1, 2007.

After reviewing the record, we conclude that the charge error was not egregiously harmful. *See Taylor*, 332 S.W.3d at 488-89; *Martin*, 335 S.W.3d at 876. Although the jury could not convict appellant for continuous sexual abuse based on his conduct prior to September 1, 2007, the jury could consider such conduct as circumstantial evidence of appellant's conduct between September 1, 2007 and March 28, 2008—the date when the children were removed from the Oliver home. *See Taylor*, 332 S.W.3d at 488-93; *Martin*, 335 S.W.3d at 876; *see also* TEX. CODE CRIM. PROC. ANN. Art. 38.37 (West Supp. 2013). Moreover, as mentioned above, appellant's defense was that the testimony of the children was not credible and that no acts of sexual abuse occurred at any time. If the jurors believed the children and the caseworkers, and it is plain that they did, it is unlikely that appellant's sexually abusive acts stopped before September 1, 2007. Based on the circumstantial evidence above, the jurors could have lawfully convicted appellant for continuous sexual abuse even if they had been properly instructed not to base a conviction on his conduct prior to September 1, 2007. *See Taylor*, 332 S.W.3d at 488-89 (concluding that, in an aggravated-sexual-assault case, appellant was not egregiously harmed by charge error that presented the jury with a much broader chronological perimeter than is permitted by law); *Martin*, 335 S.W.3d at 876; *see also Williams v. State*, 305 S.W.3d 886, 892 (Tex. App.—Fort Worth 2010, no pet.) (holding that the jury must only reach a unanimous verdict concerning whether the defendant committed two or more acts of sexual abuse during a period that is thirty days or more and that the jury did not have to unanimously agree on which specific acts of sexual abuse were committed). Accordingly, we cannot say that the charge error

Oliver v. State                                                                                                    Page 18

in this case was so egregiously harmful that it deprived appellant of a fair trial. *See*
*Stuhler*, 218 S.W.3d at 719; *Sanchez*, 209 S.W.3d at 121; *Olivas*, 202 S.W.3d at 144;
*Almanza*, 686 S.W.2d at 171. We overrule appellant's second issue.

## V. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that the evidence supporting his conviction
is insufficient to demonstrate that the alleged acts took place over a thirty-day period or
that the acts occurred after September 1, 2007, the effective date of the operative statute.
We disagree.

### A. Standard of Review and Applicable Law

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of
Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a
> conviction, a reviewing court must consider all of the evidence in the light
> most favorable to the verdict and determine whether, based on that
> evidence and reasonable inferences therefrom, a rational fact finder could
> have found the essential elements of the crime beyond a reasonable doubt.
> *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560
> (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This
> "familiar standard gives full play to the responsibility of the trier of fact
> fairly to resolve conflicts in the testimony, to weigh the evidence, and to
> draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443
> U.S. at 319. "Each fact need not point directly and independently to the
> guilt of the appellant, as long as the cumulative force of all the
> incriminating circumstances is sufficient to support the conviction."
> *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and
improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if

the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

In this case, the hypothetically-correct jury charge for the continuous sexual abuse of a child required the State to prove beyond a reasonable doubt that appellant: (1) committed two or more acts of sexual abuse; (2) during a period that was at least thirty days in duration; (3) that at the time of the acts of sexual abuse, the defendant was seventeen years of age or older and the victim was a child younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2013); *see also Michell v. State*,

381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.). The "acts of sexual abuse" alleged by the State include two acts of aggravated sexual assault and one act of indecency with a child. A person commits aggravated sexual assault if he intentionally or knowingly causes the penetration of a child's sexual organ, or if he intentionally or knowingly causes the sexual organ of a child to contact the mouth of another person. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(1)(B)(iii), (a)(2)(b)(1) (West Supp. 2013). Indecency with a child includes touching any part of a child's genitals with intent to arouse or gratify the sexual desire. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(1) (West 2011).

**B.     Discussion**

Here, CPS investigator Jamie Beesley testified that the Oliver family moved from Oregon to Texas in 2007 and that Texas CPS first became involved with the family in February 2008. As noted above, witnesses testified that many instances of sexual abuse occurred from the time the Olivers moved to Texas until March 2008. Specifically, Melissa testified that she observed Abigail being sexually abused when Abigail was about four years old. The foster mother testified that Abigail was eight years old at the time of trial—October 16, 2012; as such, an inference could be made that Abigail was sexually abused in 2008, or, in other words, after September 1, 2007. Additionally, January stated that she received information from the therapist of the children that Melissa had "made another outcry about her father molesting her and that she indicated that it happened in Oregon and also in Texas at the house on Magnolia." January also confirmed that Autumn told her that appellant had touched her private

area and did bad things to her "at the Magnolia house when her dad was drinking alcohol." Skains noted that the girls told her that appellant sexually abused them in the yellow house with a bow, which Amy identified as the Magnolia house in Corsicana, Texas. Moreover, January recounted that, a day before removal on March 28, 2008, Melissa made an outcry to her biological mother about recent sexual abuse, which suggests that at least two instances of sexual abuse occurred for a period of thirty days after September 1, 2007.

Additionally, Madysen testified that appellant had rubbed her "boobies" when they lived in the yellow house on Magnolia. Autumn stated that she believed that appellant had touched Melissa's private areas and that she made her initial outcries, which she eventually recanted, to protect Melissa. On one occasion, Autumn observed Melissa crying while talking to her biological mother. Autumn was told to "get out of the room"; however, she overheard her biological mother tell Melissa to stay away from appellant. Melissa testified that appellant would "put his private parts next to mine" while they both were naked. Melissa also noted that appellant "used his private and started to mess with mine" and that she could feel appellant's private go inside her private. Melissa recounted that this happened a couple of times and that it hurt. In addition, Melissa testified that she observed appellant touch the privates of Abigail and Melanie. With respect to Melanie, Melissa saw, on two occasions, appellant holding his private and trying to "put it inside [Melanie's]." With regard to Abigail, Melissa remembered seeing appellant "rubbing his private up against [Abigail's]." In fact, in

one of her outcry interviews, Melissa noted that "she saw [appellant] rubbing his private against Abigail's butt."

In her August 2009 outcry interview, Melissa stated that appellant tried to put his private in her mouth when she was eight or nine years old and that it happened once in appellant's truck and another time in the house. Melissa also noted in her August 2009 outcry interview that appellant "asked her to rub her pee pee on his chest" and that something "came out of the end of his pee pee." And finally, with regard to her age, Melissa stated that she was born on January 29, 1999; thus, with respect to the oral sex acts referenced in Melissa's August 2009 outcry interview, those acts must have transpired between January 29, 2007 and January 27, 2008—a range of dates that includes time after September 1, 2007.

Although the child victims in this case were unable to articulate the exact times and dates of the sexual abuse perpetrated by appellant, there was sufficient evidence to allow the jury to determine whether the crimes occurred during a period that was thirty days or more after September 1, 2007. *See Williams*, 305 S.W.3d at 890 n.7 ("Arguably this [the child's inability to articulate the exact dates when the abuse occurred] is precisely the kind of situation the Legislature considered when it enacted Section 21.02 of the Texas Penal Code." (citing *Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring))). Therefore, viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant sexually abused Madysen, Melanie, and Melissa during a period that is thirty or more days in duration after September 1, 2007.

*See* TEX. PENAL CODE ANN. § 21.02; *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Michell*, 381 S.W.3d at 561; *Williams*, 305 S.W.3d at 890 n.7; *see also Cantu v. State*, No. 13-10-00270-CR, 2011 Tex. App. LEXIS 6658, at **14-16 (Tex. App.—Corpus Christi Aug. 22, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding that the evidence supporting Cantu's conviction for continuous sexual abuse of a child is sufficient despite Cantu's argument that the child victims testified about the time line in broad generalities and one of the child victims allegedly never specifically testified about sexual abuse occurring during the time period specified in the indictment). Therefore, the evidence was legally sufficient to support appellant's conviction for continuous sexual abuse of a child. *See* TEX. PENAL CODE ANN. § 21.02; *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Michell*, 381 S.W.3d at 561; *Williams*, 305 S.W.3d at 890 n.7; *see also Cantu v. State*, 2011 Tex. App. LEXIS 6658, at **14-16. We overrule appellant's first issue.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

In his fourth issue, appellant complains that his trial counsel did not provide effective assistance of counsel.

### A. Applicable Law

To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must show that counsel was so deficient as to deprive appellant of his Sixth Amendment right to counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Second, appellant must show that the deficient representation was prejudicial and

resulted in an unfair trial. *Id.* To satisfy the first prong, appellant must show that his counsel's representation was objectively unreasonable. *Id.*; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). To satisfy the second prong, appellant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812. A reasonable probability exists if it is enough to undermine the adversarial process and thus the outcome of the trial. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001). The appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Thompson*, 9 S.W.3d at 813. Our review is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.3d at 813.

The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). "Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination." *Ex parte Welborn*, 875 S.W.2d 391, 393 (Tex. Crim. App. 1990). Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and an allegation of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813.

Trial court counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Specifically, when the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Therefore, absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007).

**B.     Discussion**

The record reflects that appellant's trial counsel filed numerous pre-trial motions, including several motions in limine. Moreover, appellant's trial counsel vigorously objected to outcry hearsay testimony and argued that the outcry witnesses presented by the State were improper. Appellant's trial counsel lodged numerous other objections as well. On appeal, appellant recognizes that most of his complaints about trial counsel's representation should be raised in a writ of habeas corpus. However, he does assert that trial counsel's failure to object to the jury charge is so egregious that it sufficiently establishes his ineffective-assistance-of-counsel claim on the trial record alone. We disagree.

Appellant specifically argues that his trial counsel should have requested an instruction that the jury had to unanimously find that two or more of the acts described in the indictment occurred after September 1, 2007, the date on which the operative statute became effective. As noted above, the failure to include such an instruction constitutes charge error; however, the error did not egregiously harm appellant, especially in light of the testimony adduced at trial and trial counsel's strategy. Specifically, appellant's trial counsel advanced a common defensive theory—that no sexual abuse occurred at any time. *See Taylor*, 332 S.W.3d at 489-93; *Martin*, 335 S.W.3d at 876. Though we look to the totality of counsel's representation, we note that an error in trial strategy will be deemed inadequate only if counsel's action lacked any plausible basis. *See Ex parte Welborn*, 875 S.W.2d at 393; *see also Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980).

Here, if trial counsel had objected to the jury charge and requested the inclusion of an instruction limiting the dates to after September 1, 2007, the jury could have interpreted the instruction as an admission by appellant that sexual abuse had occurred prior to this date. Such an instruction would have undermined trial counsel's defensive theory that no sexual abuse occurred at any time. As such, we cannot say that trial counsel's failure to object to the jury charge and to request the aforementioned instruction was so outrageous that no competent attorney would have done it. *See Roberts*, 220 S.W.3d at 533; *see also Thompson*, 9 S.W.3d at 814 ("An appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially

when the record provides no discernible explanation of the motivation behind counsel's actions—whether those actions were of strategic design or the result of negligent conduct."). Therefore, considering trial counsel's representation in its totality, we conclude that appellant has failed to establish the first prong of *Strickland*. *See* 466 U.S. at 687, 104 S. Ct. at 2064; *Lopez*, 343 S.W.3d at 142; *Thompson*, 9 S.W.3d at 813. And because we have concluded that appellant failed to establish the first prong of *Strickland*, we need not address the second prong. *See Thompson*, 9 S.W.3d at 813-14; *see also Gomez v. State*, No. 08-10-00276-CR, 2012 Tex. App. LEXIS 1013, at *16 (Tex. App.—El Paso Feb. 8, 2012, no pet.) (not designated for publication) ("If an appellant fails to satisfy his burden under the first *Strickland* prong, there is no need to address the second."). Accordingly, we overrule appellant's fourth issue.

## VII. CONCLUSION

Having overruled all of appellant's issues, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed March 13, 2014
Do not publish
[CRPM]